[No. 13917.  Department Two.  April 3, 1917.]

# B. J. BERGEN, *Respondent*, v. LEWIS COUNTY, *Appellant*.[1]

COUNTIES — ACTIONS — MAINTENANCE OF FERRY — LIABILITY.  A county is liable for injuries sustained through the operation of a county ferry, under Rem. Code, § 951, providing that an action may be maintained against a county for an injury to the rights of the plaintiff arising from some act or omission of such county, and it is immaterial that Rem. Code, § 5013, authorizing counties to operate ferries was passed subsequently, since the former was a general act.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE.  Error cannot be predicated upon the admission of irrelevant and immaterial evidence that was entirely harmless and of no consequence.

SAME—REVIEW—HARMLESS ERROR — EVIDENCE—CHANGE OF CONDITIONS AFTER ACCIDENT.  In an action for damages for negligence in operating a county ferry without fastening it to the shore while loading, it is not prejudicial error to admit evidence that, after the accident, chains were furnished by the county for that purpose, where it appears that ropes were furnished at the time of the accident and were not used, and where the court instructed the jury that evidence of the means provided after the accident to make the boat more safe was not evidence of neglect at the time of or prior thereto.

EVIDENCE—OPINIONS—NONEXPERTS.  In an action for damages for negligence in operating a county ferry, nonexperts who had used the boat upon different occasions are competent to give their opinions upon the result of their experiences with the particular boat in question.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered June 9, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*C. A. Studebaker*, for appellant.

*Forney & Ponder*, for respondent.

MOUNT, J.—The respondent, in May, 1915, lost a horse, some harness, and some seats from a wagon, which were pre-

[1]Reported in 164 Pac. 73.

cipitated into the Cowlitz river while the respondent was endeavoring to cross that river upon a ferry. This ferry was operated as a free ferry by Lewis county. Respondent brought this action against the county to recover the value of the property, and, upon issues joined and trial of the case to a jury, recovered judgment against the county for $225.

The county has appealed from that judgment. The appellant argues that a demurrer should have been sustained to the complaint, for the reason that the county is not liable for damages resulting from the operation of a ferryboat by the county. The appellant contends that counties are not liable for wrongs committed in the exercise of their corporate powers, except by express legislative enactment, and that such legislative enactments must be construed strictly; that there is no statute in this state which, strictly construed, authorizes an action for damages against a county in cases of this kind. The statute upon this subject (Rem. Code, § 951) is as follows:

"An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

This statute was originally passed in 1869. At that time, there was no statute in this state authorizing counties to operate ferries, but subsequently, in the year 1895, counties were authorized to operate and maintain ferries. Rem. Code, § 5013.

The appellant reasons that, because, at the time the statute above quoted was enacted, counties were not authorized to operate ferries, the subsequent passage of the act authorizing ferries did not render counties liable for the misman-

agement of ferries, because the general act does not speci-
fically mention ferries.  We think there is no merit in this
contention.  Rem. Code, § 951, above quoted, is a general
section and applies to all acts or omissions of the county.  It
is not limited to any particular subject.  When the county
was without authority to operate a ferry, of course this
section did not then apply, but when the legislature after-
wards authorized counties to operate ferries, the act applied
to ferries as well as to every other endeavor operated or
conducted by a county.  It was not necessary for the legis-
lature to again say that, in the operation of ferries, counties
should be liable for injuries to the rights of persons using
such ferries, because that liability was already provided by
a general statute.  This court has held that counties are
liable in damages for injury to the rights of persons, arising
from acts or omissions of counties, where bridges were being
operated, and where school districts were involved.  See:
*Redfield v. School District No. 3*, 48 Wash. 85, 92 Pac. 770;
*Howard v. Tacoma School Dist. No. 10*, 88 Wash. 167, 152
Pac. 1004, and cases therein cited.  We are satisfied, there-
fore, that the court properly overruled the demurrer to the
complaint.

Upon the trial of the case, it was conceded that the ferry-
boat was being operated by the county as a free ferry; that
the respondent reached the ferry when the ferryman was on
the opposite side of the river; that he signalled the ferryman
to come and take him across.  The ferryman came across,
and respondent contends that the ferryman, when he ar-
rived across the river, signalled the respondent to drive upon
the ferryboat; that the respondent, at that time, was some
forty or fifty feet away, and the approach to the ferryboat,
was a steep down-grade; that, when the respondent received
the signal, he drove down the grade, and, as his horses
stepped upon the ferryboat, it was pushed out into the
stream, and the horses and wagon were precipitated into

the river. It was denied by the appellant, upon the trial, that the ferryman had signalled the respondent to drive upon the boat, but it was claimed, on behalf of the county, that the respondent drove upon the boat before he had received any signal, in a careless and reckless manner, and before the ferryboat was fastened to the shore; that the respondent did not obey the direction of the ferryman, but, when his team was wholly upon the boat, and the wagon about half upon the boat, the respondent proceeded to back his horses, and thereby pushed the boat from the landing into the stream, and caused his own injury.

Upon the trial, a witness was asked:

"Was there any skiff or any attending boat attached to the ferry boat, or any in close proximity to it?"

He answered:

"No, not that I saw. Q. Would you have seen them if they had been there? A. I probably would. Q. Was there any skiff or anything of that kind there available for use in time of emergency?"

This last question was objected to, but the objection was overruled, and the witness answered: "There was a skiff on the other side of the river from where we were; yes, sir."

It is contended by the appellant that this evidence was erroneous. We do not see the relevancy of the evidence, but even though it was irrelevant or immaterial, we think it was entirely harmless and of no consequence in the case.

It is next urged that the trial court erred in admitting evidence to the effect that, after the accident, the county furnished chains with which to fasten the boat to the bank. When the ferryman was upon the stand, he was asked this .question:

"Did you when you were running that boat have chains furnished by the county to you to use?"

An objection was made to this question, and sustained. Then the following occurred:

"Q. Did you request the county commissioners to furnish you with any fastenings for the boat?"

There was an objection to this, and the court said: "I don't think you can go into that while he was there."

"Q. Do you know when the county did furnish chains for the mooring of this boat?"

An objection was made to this, and overruled.

"A. Well it was after I turned the boat over to Mr. Rose, after this accident happened. Q. Before that time what means did they have for mooring the boat to the shore?"

An objection was overruled, and the witness answered:

"Well I had a piece of rope right there. Q. Furnished by whom? A. It was furnished by the county."

It is contended by the appellant that this evidence was erroneous because it shows a change of condition after the accident. We think this evidence was not prejudicial, for two reasons: First, the character of the fastening was not claimed as negligence. Negligence was based upon the non-use of the fastening provided. The rope furnished was not used. That fact was the negligence claimed. Whether the fastening provided was a chain or a rope would make no difference. Second, the court instructed the jury specifically to the effect that:

"Whatever acts have been done or means provided, if any, since such accident, by the defendant, toward making the boat more safe or more secure, is no evidence of neglect at that time or prior thereto and you are instructed not to consider the fact that other or different means have been adopted since such accident."

It follows that, if there was any error at all in the evidence offered, it was plainly cured by this instruction.

The appellant argues that the court erred in admitting evidence of certain persons who had crossed the ferry, as to the way the ferry was operated, and as to their judgment of safe operation. It is argued by the appellant that these

witnesses were not experts, and that it was error, therefore, to receive their judgment. These witnesses testified that they had used this ferry upon different occasions. One of these witnesses had built the ferry himself. He testified as to the manner of its operation, and as to the result of driving upon the ferry in particular ways. We are satisfied that these witnesses were competent to give their opinions upon the results of their experience with this particular boat.

The appellant devotes several pages of its brief to a criticism of the instructions. It is not necessary, in this opinion, to set out these instructions. We have read them carefully, and find there is no merit in any of the assignments thereon. The appellant selects sentences and words from the different instructions, and argues that these sentences and words do not declare the law, but, taken in their setting, as used in the instructions, we are satisfied that they sufficiently stated the law to the jury.

We find no error in the record, and the judgment must therefore be affirmed.

ELLIS, C. J., HOLCOMB, PARKER, and FULLERTON, JJ., concur.